EDUARDO UGARTE, Plaintiff and Appellant, *v.* LESLIE A. MACLEOD ET AL., ETC., Defendants and Appellees.

No. 8011.   Argued January 23, 1940.—Decided May 23, 1940.

*C. H. Juliá* for appellant.   *George A. Malcolm, Attorney General,* and *Emilio de Aldrey, Assistant Attorney General,* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Section 2 of "An Act to create two additional positions of court stenographer for the District Court for the

Judicial District of San Juan, . . ." approved April 18, 1928 (Session Laws 128) reads as follows:

"That the said employees shall be appointed by the Judges of the District Court for the Judicial District of San Juan, and shall receive an annual salary of one thousand eight hundred (1,800) dollars each."

The pivotal question is whether the provisions of subsequent appropriation acts reducing the salaries of these two stenographers are unconstitutional as contrary to paragraph 9 of section 34 of the Organic Act which provides that:

"No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be reenacted and published at length."

There are two lines of cases. Examples are *Hailey v. Huston*, 136 Pac. 212 cited by appellant, and *State* v. *Clausen*, 138 Pac. 653 cited by appellees. In *State* v. *Clausen*, the Supreme Court of Washington said:

"Whether the legislature can provide, in a general appropriation bill, for an increase of salary to any officer whose salary has been theretofore fixed by a general law, and, if so, whether the title of the general appropriation bill of 1913 is sufficient under art. 2, pars. 19 and 37 of the state constitution, are the questions to be decided. These questions so blend that we will not attempt to discuss them separately, but will treat the case in the order in which it most naturally presents itself.

·       ·       ·       ·       ·       ·       ·       ·       ·

"If the appropriation bill were to be treated as an act amendatory of the law of 1890, there might be some merit in respondent's contention that it offends against par. 37; and it is upon the theory that the appropriation bill is an act amendatory of the previous law that the cases relied on by the Assistant Attorney General are bottomed; but this court has held that this section does not apply to an act which is complete within itself, although it may repeal by implication or be treated as a substitute for a former act on the same subject. This phase of the law is so exhaustively treated in the case of *Spokane Grain & Fuel Co.* v. *Lyttaker*, 59 Wash. 76, 109 Pac. 316, that we shall not pursue the inquiry, but rather proceed

to the question whether the title of the act (it has been quoted) is sufficient to sustain the appropriation bill treating it as an act which repeals or suspends the former law by implication.

"We are met at this point by respondent with the following cases: *State* v. *Cutler,* supra; *State* v. *Steele,* 57 Tex. 200; *State* v. *Cook,* 57 Tex. 205; *Hailey* v. *Huston* (Idaho), 136 Pac. 212.

"The Cutler case holds against our conclusion. The court there proceeded upon the theory that the appropriation bill was amendatory of the original act and was not a complete act covering the same subject-matter. The court admits:

" 'It is true that we held in *Mill* v. *Brown,* 31 Utah 473, 88 Pac. 609, and in *Marioneaux* v. *Cutler,* 32 Utah 475, 91 Pac. 355, in harmony with the great weight of authority, that this constitutional provision does not apply to independent acts, and, further, when there is an irreconcilable conflict between a later and a prior law, that the later one repeals the former by implication.'

"The Steele case also sustains respondent's contention. As we read the Cook case, it does not touch the principle here involved. In the Huston case the salary of the librarian of the State Historical Society was fixed by a general law. The Legislature at its 1913 session appropriated a greater sum in solido for salaries. The title to the act was in effect, if not in terms, as broad as our own. The reasoning of the court is comprehended in the following: 'It certainly was not contemplated that an amendment to a salary statute could be tucked away in a general appropriation bill, and no reference made to it in the title of the bill. The title to said appropriation bill would not give to any member of the Legislature or to any other person any inkling of a purpose to increase a salary. That section of the Constitution which provides that every act shall embrace but one subject and matter properly connected therewith, and that such subject shall be expressed in the title, was for the purpose of giving the members of the Legislature, as well as citizens generally, notice of the purpose and objects of the bill, and provides for titles to all bills, as well as for a unity of title and subject-matter.'

"From what we have already said it will be seen that our notion of the place where a person seeking to ascertain the salary of an officer would inquire does not accord with that of the Idaho court. That court, as does the Texas and Utah courts, treats the act reviewed as amendatory rather than as an act complete and repugnant. The

court does not go into the books, no authorities are cited, and in our judgment the decision is not sustained by authority or sound reason.''

Paragraph 8 of section 34 of our Organic Act reads in part as follows: (Italics ours) ''No bill *except general appropriation bills,* shall be passed containing more than one subject, which shall be clearly expressed in its title . . . .'' Similar prohibitions in the Constitutions of Washington and Idaho seem to have contained no such exception. A dissenting opinion in the *Clausen* case was based squarely on the fact that the title of the appropriation act did not ''include the subject of changing the salary of an office''—not on the constitutional counterpart of our paragraph 9, *supra.* See also *Spokane Grain & Fuel Co.* v. *Lyttaker,* 59 Wash. 76, 109 Pac. 316, *supra,* regarded in the *Clausen* case as obviating the necessity of further inquiry into the first of the two questions there presented. The provision which forbids amendments by reference to title only is substantially the same as our own.

In 59 C. J. 868–873, cited by appellees, we read:

''Section 454. Where an act is passed as original and independent legislation and is complete in itself so far as it applies to the subject matter properly embraced within its title, and requires no reference to any other statute to render it intelligible and to determine its meaning and scope, it does not fall within the spirit or meaning of the constitutional provisions prohibiting amendment by reference to title only, and requiring statutes amended to be reenacted and published in full as amended... The provisions are directed against the practice of amending or revising laws or other alterations which, without the presence of the original act, are unintelligible, and is limited to statutes which are strictly amendatory....

''Section 455. It has been uniformly held that the constitutional provisions were not intended to abolish the power of the legislature to enact acts which amend preexisting legislation by implication only, and if an act or statute is in itself complete and intelligible without reference to other legislation, it is not within the prohibition of the

constitutional provisions by reason of the fact that it amends other statutes by implication, and it is not necessary that such statutes should be reenacted and set out at length as modified.

"Section 456. In support of the rule above stated it has been said that any new legislative provision may in some sense be said to amend the prior system of laws, and that if it were necessary that all prior statutes modified by a new act by implication should be reenacted and republished at length as modified, then a large part of the laws of the state would be required to be republished at every session and parts of them several times over, until, from mere immensity of material, it would be impossible to understand what the law was. Any other construction of the constitutional provisions would result in more evil than was intended to be corrected thereby and would make it practically impossible to legislate."

Our conclusion is that the provisions of subsequent general appropriation acts reducing the salary of petitioner were not unconstitutional.

Other questions raised by the brief for appellant, either do not demand serious consideration, or have been decided adversely to appellant in *De la Vega* v. *Sancho Bonet, Treas., ante,* 722, and *Nazario* v. *Winship, ante,* 804.

See also *Soto Zaragoza* v. *McLeod, Auditor, et al., ante,* p. 775.

The judgment of the district court must be affirmed.